UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                        17-CR-05-A
                                            **DECISION AND ORDER**

MICHAEL ELDER,

            Defendant.
_____

On July 25, 2018, defendant Michael Elder was convicted of three narcotics-related offenses after a three-and-a-half-day jury trial. The convictions followed seizures of controlled substances, drug paraphernalia, and currency from defendant Elder's home by United States Probation Officers.

Defendant Elder moves pursuant to Fed. R. Crim. P. 29 for a judgment of acquittal notwithstanding the verdicts on the ground that there was insufficient evidence for a rational jury to find that he possessed the controlled substances. For the reasons that follow, the Court finds the guilty verdicts were supported by legally-sufficient admissible evidence. The defendant's motion pursuant to Rule 29 for a judgment of acquittal is therefore denied.

## BACKGROUND

On November 3, 2016, after a series of anonymous tips were received by the U.S. Drug Enforcement Administration that defendant Elder was selling heroin and fentanyl from his residence at 143 Edgewood Drive, Tonawanda, New York, while he was on supervised release, U.S. Probation Officers searched the residence. Probation Officers found suspected cocaine base and fentanyl, hydraulic presses and

other drug-trafficking paraphernalia, and approximately $23,000 of U.S. currency.

On January 5, 2017, a grand jury returned an Indictment against defendant Elder charging him with one count of possession with intent to distribute more than 28 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), one count of possession with intent to distribute fentanyl and fentanyl-related substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(1). Trial of the three-Count Indictment began on July 23, 2018, and concluded after the three guilty verdicts were returned on July 25, 2018.

Defendant Elder testified on his own behalf. He denied his guilt and suggested that an ex-girlfriend planted the controlled substances in his residence as revenge for his having broken up with her.

## A RULE 29 JUDGMENT OF ACQUITTAL IS NOT WARRANTED

Rule 29(c) of the Federal Rules of Criminal Procedure authorizes a court to acquit a defendant despite a jury verdict of guilty if the evidence introduced during the trial was not legally sufficient to support the verdict. But a motion for acquittal pursuant to the Rule may be granted only if, after viewing the evidence in the light most favorable to the United States, no rational juror could find that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998).

In viewing trial evidence in the light most favorable to the United States, the

United States must be credited with every reasonable inference that could have been drawn in its favor. *Jackson*, 443 U.S. at 319; *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). A Rule 29(c) motion can only be granted if the evidence of the crime alleged is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2018) (quotation omitted). Accordingly, a defendant challenging the sufficiency of the evidence bears a "heavy burden." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013).

Moreover, the ultimate question raised by a challenge to the legal sufficiency of evidence are not whether a court believes that the evidence at trial establishes a defendant's guilt beyond a reasonable doubt, but whether any rational trier of fact could reasonably reach that conclusion. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015). The Second Circuit has emphasized repeatedly that "courts must be careful to avoid usurping the role of the jury." *Facen*, 812 F.3d at 286 (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id*.

**The Forensic Chemist's Opinion**. Defendant Elder argues that the United States introduced no legally competent evidence that the substances found in his residence were controlled substances. He argues that testimony of a forensic chemist, and the reports that she sponsored for admission, were inadmissible because they lacked an evidentiary foundation, and because admission of the

3

testimony and reports violated his rights under the Confrontation Clause. U.S. Const., Amdt. 6. The defendant argues there was, therefore, no cognizable evidence that substances seized from his residence on November 3, 2016 were controlled substances.

These issues arose during the testimony the United States' forensic chemist, Ms. Reena Patel. As defense counsel was cross-examining Ms. Patel, and after the chemist's "reports" identifying the types and quantities of controlled substances seized from defendant Elder's residence had been admitted and published to the jury, counsel asked the chemist to produce records of calibration of the instrument she used to conduct Gas Chromatography Mass Spectrometry (GC/MS) analyses during her work on the case. Ms. Patel testified that her lab calibrates the instrument on a regular basis, but that she did not have the calibration records with her. Counsel then objected to the chemist's testimony and asked that it be stricken from the record. The Court immediately overruled the objection pursuant to Rule 705 of the Federal Rules of Evidence.

Rule 705 permits an expert like the chemist in this case to testify to an opinions without disclosing the underlying facts and data, unless the Court requires otherwise. *See e.g.*, *United States v. Bastanipour*, 697 F.3d 170, 176-77 (7th Cir. 1982); *United States v. Gaskin*, 364 F.3d 438, 460 (2d Cir. 2004); *see also Williams v. Illinois*, 567 U.S. 50 (2012). Ms. Patel did indicate the bases of her opinions on direct examination and cross-examination. And, even given the sparse record counsel had developed, defendant Elder was able to adequately cross examine the

4

chemist to seek to diminish the weight to be given to her opinions.

While defendant Elder complains that his confrontation of Ms. Patel about her lab's GC/MS instrument calibration was stymied, the defendant failed to take advantage of various steps that were available to him to have properly laid groundwork for his cross-examination. He did not seek pretrial disclosure of the calibration records. He did seek a *Daubert*[1] hearing to challenge the reliability of the chemist's opinions and data. He did not seek to *voir dire* the chemist outside the presence of the jury about whether her lab had experienced any GC-MS calibration problems, other instrument-reliability problems, or record-keeping problems. He did not seek a trial continuance and an order requiring the chemist to retrieve the calibration records for his use during cross examination. He did not use the complete results of GS/MS analyses that were available to ask the chemist how the results might change due to a calibration error. And he proffered no good-faith basis, let alone evidence, sufficient for the Court to conclude that the chemist's analyses should be stricken as unreliable or incorrect. Given this record, the defendant's objections to the chemist's opinions would have been more properly framed as arguments directly to the jury about the weight to be given her opinion testimony, and not as inadmissibility arguments. *See e.g.*, *Gaskin*, 364 F.3d at 460.

**The Evidence of Possession.** Defendant Elder further argues that because no *direct* evidence showed that he possessed the controlled substances and drug-

---

[1] Under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), expert opinion testimony must be both reliable and relevant.

5

trafficking paraphernalia found in his residence, and because he personally denied possession any controlled substances during his testimony, there was legally insufficient evidence for a rational jury to conclude he possessed the substances. But "crimes may be proven entirely by circumstantial evidence." *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994). The defendant's "view that circumstantial evidence is inherently weaker than direct evidence . . . is baseless." *Id.*

Moreover, in reviewing the legal sufficiency of the evidence, the Court must give deference "to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002). The Court must analyze the pieces of evidence "in conjunction, not in isolation," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation omitted), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999); *accord Persico*, 645 F.3d at 104. "[T]hese principles apply whether the evidence being reviewed is direct or circumstantial." *See United States v. Maldonado-Rivera*, 922 F.2d 934, 978 (2d Cir. 1990). Here, there was more than legally-sufficient evidence of defendant Elder's possession of the controlled substances he was charged with possessing.

The jury heard that Probation Officers and DEA agents recovered approximately 92 grams of cocaine base, significant quantities of fentanyl, butyryl fentanyl, and furanyl fentayl, along with a scale from below a cabinet baseboard in

the kitchen of the defendant's residence.  The jury also heard that that law enforcement seized packaging materials consistent with drug sales, dust masks, a vacuum sealer and diluents commonly used for the sale of narcotics from the kitchen.  Packaging materials of the sort used for heroin were seized from a crawlspace on the second floor.  Three hydraulic presses used for making powder bricks were seized from the basement.  More than $20,000 cash from was seized from the defendant's bedroom.  Four cell phones were recovered from a toilet seat next to where defendant had exited the shower just before the search began.

Documents seized during the search tended to show that defendant Elder was anxious to avoid U.S. Probation supervision, and that he planned to do so through an ambitious plan for a new business for which he would need a substantial amount of money.  Nevertheless, the jury heard evidence that the defendant's monthly reported income to U.S. Probation and expenditures did not comport even with the amount of cash law seized from the defendant's bedroom.  In addition, the jury heard testimony that the defendant, just months after his release from custody to supervision, purchased a newer model Jeep SUV with U.S. Probation Officer James Dyckman's approval, but not before Officer Dyckman denied the defendant's request to purchase an even more expensive Cadillac Escalade SUV.

The jury also heard testimony from defendant Elder and his mother.  The defendant admitted to possessing most of the items listed above, with the exception of the controlled substances, the scale, the hydraulic presses, and the heroin packaging.  The defendant and his mother gave innocent, exculpatory explanations

7

for the thousands of baggies he possessed, the security cameras inside and outside of the house, the dust masks in the kitchen, the approximately $20,000 of currency, and the defendant's possession of four cell phones that were found on the toilet seat next to the shower. In the context of the trial as a whole, a rational jury could have concluded that the defendant gave false testimony to try to avoid another federal criminal conviction.

While being cross-examined, defendant Elder admitted that he did not accurately fill out his monthly probation reports and concealed the truth about how many phones he possessed and who he was living with at various times. When the defendant was pressed on his testimony about the mannitol, a common cocaine and fentanyl-analog diluent, and the four cell phones, the defendant explained he was using the mannitol as a bodybuilding supplement and four cell phones for market research for a business. In the context of all the evidence, a rational jury could have concluded his answers were knowingly false answers. A rational jury could have concluded that the defendant was conscious of his guilt.

Defendant Elder and his mother testified that there were locks on the doors of 143 Edgewood Drive, and functioning security cameras around the residence, but they acknowledged not reporting any intruders before, during, or immediately after the search of the residence. While the defendant speculated that his ex-girlfriend was responsible for all the contraband, and that she had said she would get him, based upon the evidence at trial, the jury could have rationally concluded the defendant was trying to shift blame for the controlled substances, the scale, cell

8

phones, various kinds of packaging, hydraulic presses, dust masks, diluent, and more than $20,000 of currency from his residence away from himself to avoid another federal criminal conviction.  There was more than legally sufficient evidence that the defendant knowingly had the power and intention to exercise dominion and control over the residence where the controlled substances and evidence of drug-trafficking was found and seized.  The defendant therefore fails to carry his heavy burden under Rule 29 and his motion for a judgment of acquittal is denied.

## CONCLUSION

For the reasons stated above, defendant Michael Elder's motion for a judgment of acquittal is denied.  To the extent defendant Elder relies upon the same arguments to seek a new trial under Fed. R. Crim. P. 33, those arguments are without merit, there has been no miscarriage of justice, and the motion for a new trial is therefore also denied.

Sentence shall be imposed October 31, 2018 at 9:00 a.m.  The schedule for the submission of sentencing filings set in Text Order 76 remains in effect.

**SO ORDERED.**

     *s/Richard J. Arcara*
   HONORABLE RICHARD J. ARCARA
   UNITED STATES DISTRICT COURT

Dated:  September 14, 2018